FILED
CLERK, U.S. DISTRICT COURT

AUG 1 3 2008

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

WILLIAM GENE CRAWFORD,           )   NO. CV 08-3679-RSWL(E)
                                 )
            Petitioner,          )
                                 )
      v.                         )   ORDER ADOPTING FINDINGS,
                                 )
JAMES D. HARTLEY, Warden,        )   CONCLUSIONS AND RECOMMENDATIONS OF
                                 )
            Respondent.          )   UNITED STATES MAGISTRATE JUDGE
                                 )
_____)

    Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge.  The Court approves and adopts the Magistrate Judge's Report and Recommendation.

    IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

///
///
///
///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2  the Magistrate Judge's Report and Recommendation and the Judgment

3  herein by United States mail on Petitioner and counsel for Respondent.

4

5    LET JUDGMENT BE ENTERED ACCORDINGLY.

6

7    DATED:  13 AUG 2008                    , 2008.

8

9                              RONALD S.W. LEW

10   _____

11                        RONALD S. W. LEW
                SENIOR UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WILLIAM GENE CRAWFORD,                    )  NO. CV 08-3679-RSWL(E)
                                          )
                    Petitioner,           )
                                          )
        v.                                )  REPORT AND RECOMMENDATION OF
                                          )
JAMES D. HARTLEY, Warden,                 )  UNITED STATES MAGISTRATE JUDGE
                                          )
                    Respondent.           )
                                          )
_____ )

    This Report and Recommendation is submitted to the Honorable
Ronald S.W. Lew, Senior United States District Judge, pursuant to
28 U.S.C. section 636 and General Order 05-07 of the United States
District Court for the Central District of California.


                            PROCEEDINGS


    Petitioner filed a "Petition for Writ of Habeas Corpus By a
Person in State Custody" on June 5, 2008, accompanied by a supporting
Memorandum ("Pet. Mem.") and exhibits ("Pet. Ex."). Respondent filed
an Answer on June 27, 2008. Petitioner filed a Reply on July 8, 2008.

**BACKGROUND**

In 1991, after a bench trial, Petitioner was convicted of kidnapping to commit robbery, in violation of California Penal Code section 209(b), and robbery, in violation of California Penal Code section 211 (Pet. Ex. A, p. 24). The court found true the allegations that Petitioner had used a firearm in the commission of both offenses (Pet. Ex. A, p. 24). Petitioner received a total sentence of life plus eight years (Pet. Ex. A, pp. 23, 25).

On August 29, 2006, a panel of the California Board of Parole Hearings ("BPH") held a second subsequent parole consideration hearing and denied parole for two years (Pet. Ex. D; Respondent's Lodgment 1).

Petitioner filed a habeas corpus petition in the Los Angeles County Superior Court, which that court denied on August 21, 2007 (Pet. Ex. A, pp. 3-4; Respondent's Lodgments 2, 3). Petitioner filed a habeas corpus petition in the California Court of Appeal, which that court denied on January 22, 2008 (Pet. Ex. A, p. 15; Respondent's Lodgments 4, 5). Petitioner filed a habeas corpus petition in the California Supreme Court, which that court denied summarily on March 26, 2008 (Pet. Ex. A, p. 16; Respondent's Lodgments 6, 7).

**THE AUGUST 29, 2006 HEARING AND DECISION**

I. **The Hearing**

At the hearing on August 29, 2006, the presiding commissioner

2

1  read into the record a summary of Petitioner's commitment offense
2  contained in the report prepared for the hearing:

3

4      [On] February the 8th, of 1991, at about 9:00 p.m., the
5      victim was about to enter his vehicle which was parked at
6      the Albertson's Supermarket on Firestone Boulevard in
7      Downey, when he was approached by the defendant.  The
8      defendant pointed a 22-single action revolver at the victim
9      while threatening his life if he did not comply.  The victim
10     was forced to get into the driver's seat at gunpoint -- and
11     follows him and searches [sic] -- advises him to drive off
12     the parking lot.  While driving the defendant or the inmate
13     had his gun pointed at the victim while threatening to
14     engage in a shootout with police.  Furthermore in the
15     process of this kidnapping, the inmate did commit armed
16     robbery by taking $14.00 from the victim.  Witnesses at the
17     supermarket subsequently called the police and the vehicle
18     was stopped a short time later.  Witnesses identified the
19     inmate as the person with the gun.

20

21 (Pet. Ex. D, pp. 13-14; Respondent's Lodgment 1, pp. 13-14).

22

23     Petitioner's criminal history included convictions for drunk
24 driving or reckless driving, shooting at an inhabited building,
25 driving under the influence, assault with intent to commit murder,
26 taking a vehicle without the owner's consent, and passing bad checks
27
28

3

1 (Pet. Ex. D, pp. 14-17; Respondent's Lodgment 1, pp. 14-17).[1]

2 Petitioner also suffered a narcotics-related conviction in Las Vegas

3 (Pet. Ex. D, pp. 17-18; Respondent's Lodgment 1, pp. 17-18).

5    Petitioner admitted prior alcohol and drug use (Pet. Ex. D,

6 p. 14; Respondent's Lodgment 1, p. 14).  Petitioner admitted he began

7 using marijuana at age 13, and said he had used PCP, cocaine,

8 barbiturates and methamphetamine as a teenager (Pet. Ex. D, p. 20;

9 Respondent's Lodgment 1, p. 20).

11    The executive director of a company in the business of providing

12 career track opportunities in the construction trades to at-risk

13 youths and adults had offered to bring Petitioner into the program and

14 to place him in a job in the construction industry (Pet. Ex. D,

15 pp. 25-29; Respondent's Lodgment 1, pp. 25-29).  Petitioner had

16 expressions of support from his sister and stepmother, the Archdiocese

17 of Los Angeles, and the "Restorative Justice Retention Center" (Pet.

18 Ex. D, pp. 22-24; Respondent's Lodgment 1, pp. 22-24).  Petitioner had

19 an offer of transitional housing in downtown Los Angeles in the event

20 of his release (Pet. Ex. D, pp. 24-25; Respondent's Lodgment 1,

21 pp. 24-25).

23    Petitioner had received eight disciplinary reports going back to

24 2001 (Pet. Ex. D, p. 34; Respondent's Lodgment 1, p. 34).  Several of

25 those disciplinary reports were for possession of inmate-manufactured

27    [1]   In the Reply, Petitioner explains that, in 1980,
Petitioner pled guilty, on the advice of counsel, to assault with
28 a deadly weapon with the intent to commit murder (Reply, p. 7).

4

1  alcohol, one was for fighting, and one was for disrespect (Pet. Ex. D,

2  p. 34; Respondent's Lodgment 1, p. 34).  Petitioner had received

3  fourteen "CDC 128 A's," most recently on May 24, 2006 for refusing to

4  work (Pet. Ex. D, p. 34; Respondent's Lodgment 1, p. 34).[2]  Petitioner

5  said this last "128 A" was on appeal (Pet. Ex. D, p. 34; Respondent's

6  Lodgment 1, p. 34).

7

8      Petitioner had participated in Alcoholics Anonymous programs in

9  2005 and 2006 (Pet. Ex. D, pp. 36-37, 43; Respondent's Lodgment 1,

10 pp. 36-37, 43).  However, Petitioner could not recall the fifth step

11 (Pet. Ex. D, pp. 48-49; Respondent's Lodgment 1, pp. 48-49).[3]

12 Petitioner said he had continued to drink after being incarcerated,

13 and had made wine in prison, but contended he had been "clean for five

14 years" (Pet. Ex. D, p. 53; Respondent's Lodgment 1, p. 53).  Asked to

15 explain why Petitioner had waited so long to become involved in

16 Alcoholics Anonymous and Narcotics Anonymous, Petitioner said he had

17 not thought he had a problem, and that a comment a commissioner had

18 made at his 2004 parole hearing had caused Petitioner to sit down and

19 "really think" about his life (Pet. Ex. D, pp. 49-50; Respondent's

20 Lodgment 1, pp. 49-50).  Petitioner assertedly experienced an

21 "epiphany," allegedly recognizing that he was an alcoholic (Pet.

22 Ex. D, p. 50; Respondent's Lodgment 1, p. 50).

23 _____

24     [2]   The California Department of Corrections and
   Rehabilitation uses counseling "chronos" on Form 128-A to
25 record instances of minor misconduct.  See Cal. Code Regs.,
   tit. 15, § 3312(a)(2).
26
        [3]   "New A.A. members proceed sequentially through its
27 'Twelve Steps' toward sobriety."  Cox v. Miller, 296 F.3d 89, 94
   (2d Cir. 2002), cert. denied, 537 U.S. 1192 (2003) (footnote
28 omitted).

1    Petitioner had completed an anger management program (Pet. Ex. D,

2  pp. 36, 43-44; Respondent's Lodgment 1, pp. 36, 43-44).  Petitioner

3  was accepted into an "Alternative to Violence" program on July 27,

4  2006 (Pet. Ex. D, p. 36; Respondent's Lodgment 1, p. 36).  Petitioner

5  had taken classes in an office skills program involving typing and

6  related subjects, but according to Petitioner the program had been

7  cancelled (Pet. Ex. D, pp. 37-38; Respondent's Lodgment 1, pp. 37-38).

8  Petitioner had obtained a GED in August 2006 (Pet. Ex. D, p. 38;

9  Respondent's Lodgment 1, p. 38).[4]  Petitioner participated in a prison

10  literacy program tutoring other inmates (Pet. Ex. D, pp. 42-43;

11  Respondent's Lodgment 1, pp. 42-43).  Petitioner had worked in the

12  Optical Plant for many years as a clerk, but had no training in lens

13  grinding (Pet. Ex. D, pp. 40-41; Respondent's Lodgment 1, pp. 40-41).

14  Petitioner had never completed a vocational trade (Pet. Ex. D, pp. 41-

15  42; Respondent's Lodgment 1, pp. 41-42).

16

17    A psychologist's report showed a diagnosis of "Antisocial

18  Personality Disorder" (Pet. Ex. D, p. 45; Respondent's Lodgment 1,

19  p. 45).  The psychologist opined that Petitioner's propensity for

20  violence was "slightly higher than that of the average citizen based

21  upon the relatively [sic] newness of ongoing active participation in

22  substance abuse programs" (Pet. Ex. D, p. 46; Respondent's Lodgment 1,

23  p. 46).  The report stated: "The completion of a vocation and other

24  self-help programs including introspection from the part of the inmate

25

26  _____

27    [4]    Petitioner said he had obtained a GED in Nevada in
1984, but he obtained another because he assertedly could not
find the record of the Nevada GED (Pet. Ex. D, p. 38;
28  Respondent's Lodgment 1, p. 38).

1  would be a benefit given the direction this inmate is progressing, it

2  will not be long before his violence potential will continue to

3  decline" (Pet. Ex. D, p. 46; Respondent's Lodgment 1, p. 46).

4

5       A deputy commissioner commented that the psychologist's report

6  was not a "supportive statement," and that "[i]t would have been good"

7  if Petitioner had started his participation in self-help programs "a

8  few years before" (Pet. Ex. D, pp. 46-47; Respondent's Lodgment 1,

9  pp. 46-47).  Petitioner responded that "some people are just -- got to

10 learn the hard way," and agreed with the cliché "[b]etter late than

11 never" (Pet. Ex. D, p. 47; Respondent's Lodgment 1, p. 47).

12

13 II.   **The Decision**

14

15      The BPH deemed Petitioner unsuitable for parole (Pet. Ex. D,

16 p. 55; Respondent's Lodgment 1, p. 55).  The BPH based its decision on

17 findings that: (1) the commitment offense had been carried out in a

18 manner demonstrating an "exceptionally callous disregard to human

19 suffering"; (2) the motive for the offense was trivial; (3) Petitioner

20 had "on previous occasion inflicted or attempted to inflict serious

21 injury on a victim, in that he was convicted of attempted murder

22

23

24

25

26

27

28

7

1  [sic]";[5] (4) Petitioner had a record of violence and assaultive

2  behavior, and had demonstrated an "escalating pattern of criminal

3  conduct"; (5) Petitioner had "extensive use of alcohol" and a drug

4  record; (6) Petitioner had failed previous grants of probation and

5  parole; (7) Petitioner's criminal history included juvenile probation,

6  adult probation, parole, and service of a county jail term and three

7  felony prison terms; (8) Petitioner had programmed in a limited manner

8  while incarcerated, and had failed to develop a marketable skill or

9  upgrade vocationally; (9) Petitioner's history of prison misconduct

10  included fourteen 128-As and eight disciplinary violations; and

11  (10) the psychologist's report was unfavorable (Pet. Ex. D, pp. 55-56;

12  Respondent's Lodgment 1, pp. 55-56).  The BPH found that Petitioner's

13  gains had been recent, and that Petitioner needed continued

14  programming in order to discuss, understand and cope with stress in a

15  nondestructive manner (Pet. Ex. D, p. 57; Respondent's Lodgment 1,

16  p. 57).

17  ///

18  ///

19  ///

20

21  _____

   [5]   Petitioner contends the BPH improperly characterized
22  his prior conviction for assault with intent to commit murder as
   "attempted murder" (see Pet. Mem., p. 17).  Earlier, however, the
23  BPH indicated Petitioner previously had suffered a conviction for
   "assault with intent to commit murder" (see Pet. Ex. D, pp. 15-
24  16; Respondent's Lodgment 1, pp. 15-16).  In any event, the
   former crime of assault with intent to commit murder (see former
25  Cal. Penal Code § 217, repealed 1980) was the equivalent of
   attempted murder.  See People v. Koontz, 162 Cal. App. 3d 491,
26  496, 208 Cal. Rptr. 519 (1984) ("assault with the intent to
   commit murder cannot be committed without necessarily committing
27  attempted murder"; "an assault with intent to commit murder is
   attempted murder") (original emphasis).
28

**PETITIONER'S CONTENTIONS**

Petitioner contends that the BPH's denial of parole violated Due Process because the evidence assertedly supported a finding of suitability.   Petitioner also contends that the BPH's continued reliance on the unchanging factors of the commitment offense, Petitioner's criminal record, and Petitioner's pre-conviction drug and alcohol use violated Due Process.[6]

**STANDARD OF REVIEW**

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d) (as amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

///

///

---

[6]   Petitioner separates his claims into three grounds for relief.   Because Petitioner's claims are related, however, the Court discusses the claims together.

1    "Clearly established Federal law" refers to the governing legal

2   principle or principles set forth by the Supreme Court at the time the

3   state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63,

4   71-72 (2003).  A state court's decision is "contrary to" clearly

5   established Federal law if: (1) it applies a rule that contradicts

6   governing Supreme Court law; or (2) it "confronts a set of facts . . .

7   materially indistinguishable" from a decision of the Supreme Court but

8   reaches a different result.  See Early v. Packer, 537 U.S. at 8

9   (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

10

11   Under the "unreasonable application prong" of section 2254(d)(1),

12   a federal court may grant habeas relief "based on the application of a

13   governing legal principle to a set of facts different from those of

14   the case in which the principle was announced."  Lockyer v. Andrade,

15   538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

16   U.S. at 24-26 (state court decision "involves an unreasonable

17   application" of clearly established Federal law if it identifies the

18   correct governing Supreme Court law but unreasonably applies the law

19   to the facts).

20

21   A state court's decision "involves an unreasonable application of

22   [Supreme Court] precedent if the state court either unreasonably

23   extends a legal principle from [Supreme Court] precedent to a new

24   context where it should not apply, or unreasonably refuses to extend

25   that principle to a new context where it should apply."  Williams v.

26   Taylor, 529 U.S. at 407 (citation omitted).

27   ///

28   ///

1  "In order for a federal court to find a state court's application

2  of [Supreme Court] precedent 'unreasonable,' the state court's

3  decision must have been more than incorrect or erroneous." Wiggins v.

4  Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

5  court's application must have been 'objectively unreasonable.'" Id.

6  at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

7  1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).

8

9  In applying these standards, this Court looks to the last

10  reasoned state court decision.  See Franklin v. Johnson, 290 F.3d

11  1223, 1233 n.3 (9th Cir. 2002).  Where no such reasoned opinion

12  exists, as where a state court rejected a claim in an unreasoned

13  order, this Court must conduct an independent review to determine

14  whether the decisions were contrary to, or involved an unreasonable

15  application of, "clearly established" Supreme Court precedent.  See

16  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17

18  **DISCUSSION**

19

20  For the reasons discussed below, the Court should deny and

21  dismiss the Petition with prejudice.

22

23  **I.   Governing Legal Standards**

24

25  "There is no constitutional or inherent right of a convicted

26  person to be conditionally released before the expiration of a

27  valid sentence." Greenholtz v. Inmates of Nebraska Penal and

28  Correctional Complex, 442 U.S. 1, 7 (1979) ("Greenholtz").  In some

1  instances, however, states may confer a liberty interest in parole

2  under state law.   Id. at 12.   Section 3041(b) of the California Penal

3  Code provides, in pertinent part:

5      The panel or the board . . . shall set a release date unless

6      it determines that the gravity of the current convicted

7      offense or offenses, or the timing and gravity of current or

8      past convicted offense or offenses, is such that

9      consideration of the public safety requires a more lengthy

10     period of incarceration for this individual, and that a

11     parole date, therefore, cannot be fixed at this meeting.

13     The Ninth Circuit has held that section 3041(b) confers a

14 constitutionally protected liberty interest in parole.   Irons v.

15 Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) ("Irons"); Sass v. Calif.

16 Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) ("Sass");

17 Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) ("Biggs").[7]

19     Due Process requires that there exist "some evidence" to support

20 a parole decision.   Irons, 505 F.3d at 851 ("At the time that Irons'

21 state habeas petition [challenging a 2001 denial of parole] was before

22 the state courts, the Supreme Court had clearly established that a

_____

[7]      Although Respondent argues to the contrary, this Court
has no authority to disregard the Ninth Circuit's clear holdings,
in Biggs, Sass and Irons, that an inmate has a liberty interest
in parole.   See Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir.
2001) (district judge may not "disagree with his learned
colleagues on his own court of appeals who have ruled on a
controlling legal issue"); Zuniga v. United Can Co., 812 F.2d
443, 450 (9th Cir. 1987) ("[d]istrict courts are, of course,
bound by the law of their own circuit").

1  parole board's decision deprives a prisoner of due process . . . if

2  the board's decision is not supported by 'some evidence in the

3  record.'"); see also Sass, 461 F.3d at 1128-29 ("some evidence"

4  standard is "clearly established in the parole context"); Powell v.

5  Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Perveler v. Estelle, 974 F.2d

6  1132, 1134 (9th Cir. 1992); Jancsek v. Oregon Bd. of Parole, 833 F.2d

7  1389, 1390 (9th Cir. 1987) (citing Superintendent, Massachusetts

8  Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985)).

9  "To determine whether the some evidence standard is met 'does not

10  require examination of the entire record, independent assessment of

11  the credibility of witnesses, or weighing of the evidence.'"  Sass,

12  461 F.3d at 1128 (quoting Superintendent, Massachusetts Correctional

13  Institution, Walpole v. Hill, 472 U.S. at 455-56).  The "some

14  evidence" standard is "minimal," and "'the relevant question is

15  whether there is any evidence in the record that could support the

16  conclusion reached by the [BPH].'"  Sass, 461 F.3d at 1128 (quoting

17  Superintendent, Massachusetts Correctional Institution, Walpole v.

18  Hill, 472 U.S. at 455-56; emphasis added).[8]

19  ///

20  ///

21

22  _____

[8]     Respondent's contention that the "some evidence"
23  standard does not apply is without merit.  See Irons, 505 F.3d at
    851; Sass, 461 F.3d at 1128.  Carey v. Musladin, 127 S. Ct. 649
24  (2006), cited by Respondent, does not "undercut the theory or
    reasoning underlying the prior circuit precedent in such a way
25  that the cases are clearly irreconcilable."  See generally Miller
    v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); see also
26  Rose v. Kane, ___ Fed. App'x ___, 2008 WL 740311 (9th Cir. Mar.
    18, 2008) (rejecting argument that "some evidence" standard did
27  not apply to parole proceedings).  Therefore, this Court remains
    bound by Irons and Sass.
28

1       State authorities' discretion in parole matters is "great" and

2   "involves the deliberate assessment of a wide variety of

3   individualized factors on a case-by-case basis, and the striking of a

4   balance between the interests of the inmate and the public."  In re

5   Powell, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

6   (internal quotations and citation omitted); see also Biggs, 334 F.3d

7   at 915 (California law allows the state authorities "to consider a

8   myriad of factors when weighing the decision of granting or denying

9   parole"); Glauner v. Miller, 184 F.3d 1053, 1055 (9th Cir. 1999)

10  (state authorities have "broad discretion" to determine whether "the

11  necessary [statutory] prerequisites are met") (quoting Board of

12  Pardons v. Allen, 482 U.S. 369, 376 (1987)).

13

14      Under applicable state regulations, in determining suitability

15  for parole in cases such as Petitioner's, the BPH may consider, inter

16  alia, "the circumstances of the prisoner's: social history; past and

17  present mental state; past criminal history, including involvement in

18  other criminal misconduct which is reliably documented; the base and

19  other commitment offenses, including behavior before, during and after

20  the crime; past and present attitude toward the crime; any conditions

21  of treatment or control, including the use of special conditions under

22  which the prisoner may safely be released to the community; and any

23  other information which bears on the prisoner's suitability for

24  release."  Cal. Code Regs., tit. 15, § 2281(b) (2007).

25

26      "Circumstances tending to indicate unsuitability include:

27

28      (1) Commitment Offense.  The prisoner committed the offense

14

in an especially heinous, atrocious or cruel manner.  The
factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the
same or separate incidents.

(B) The offense was carried out in a dispassionate and
calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or
after the offense.

(D) The offense was carried out in a manner which
demonstrates an exceptionally callous disregard for human
suffering.

(E) The motive for the crime is inexplicable or very trivial
in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous
occasions inflicted or attempted to inflict serious injury
on a victim, particularly if the prisoner demonstrated
serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of
unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses.  The prisoner has previously

1  sexually assaulted another in a manner calculated to inflict

2  unusual pain or fear upon the victim.

3

4  (5) Psychological Factors.  The prisoner has a lengthy

5  history of severe mental problems related to the offense.

6

7  (6) Institutional Behavior.  The prisoner has engaged in

8  serious misconduct in prison or jail."

9

10  Cal. Code Regs., tit. 15, § 2281(c).

11

12  "Circumstances tending to indicate suitability include:

13

14  (1) No Juvenile Record.  The prisoner does not have a record

15  of assaulting others as a juvenile or committing crimes with

16  a potential of personal harm to victims.

17

18  (2) Stable Social History.  The prisoner has experienced

19  reasonably stable relationships with others.

20

21  (3) Signs of Remorse.  The prisoner performed acts which

22  tend to indicate the presence of remorse, such as attempting

23  to repair the damage, seeking help for or relieving

24  suffering of the victim, or the prisoner has given

25  indications that he understands the nature and magnitude of

26  the offense.

27  ///

28  ///

16

1     (4) Motivation for Crime.   The prisoner committed his crime

2     as the result of significant stress in his life, especially

3     if the stress had built over a long period of time.

4

5     (5) Battered Woman Syndrome.   At the time of the commission

6     of the crime, the prisoner suffered from Battered Woman

7     Syndrome, as defined in section 2000(b), and it appears the

8     criminal behavior was the result of that victimization.

9

10    (6) Lack of Criminal History.   The prisoner lacks any

11    significant history of violent crime.

12

13    (7) Age.   The prisoner's present age reduces the probability

14    of recidivism.

15

16    (8) Understanding and Plans for Future.   The prisoner has

17    made realistic plans for release or has developed marketable

18    skills that can be put to use upon release.

19

20    (9) Institutional Behavior.   Institutional activities

21    indicate an enhanced ability to function within the law upon

22    release.

23

24  Cal. Code Regs., tit. 15, § 2281(d).

25

26    Petitioner contends the evidence allegedly did not support many

27  of the BPH's findings.  However, under the "some evidence" test, the

28  issue is not whether the evidence supported any particular factor

1   regarding parole suitability, but rather whether "some evidence"

2   indicates the prisoner's release unreasonably would endanger public

3   safety.  See Castro v. Adams, 2008 WL 2490401 at *5 (E.D. Cal.

4   June 16, 2008); Hudson v. Curry, 2008 WL 1766773, at *4 (N.D. Cal.

5   Apr. 15, 2008); In re Hyde, 154 Cal. App. 4th 1200, 1213, 65 Cal.

6   Rptr. 3d 162 (2007).

7

8       The Los Angeles County Superior Court and the Court of Appeal

9   both held that "some evidence" supported the denial of parole (see

10  Pet. Ex. A, pp. 3-4, 15; Respondent's Lodgments 3, 5).   These

11  determinations were not objectively unreasonable.   The following

12  evidence before the BPH supported the denial of parole: (1) the

13  commitment offense, in which Petitioner kidnapped a stranger at

14  gunpoint, repeatedly threatened to kill the victim and eventually

15  robbed the victim of $14.00; (2) Petitioner's criminal history,

16  including alcohol- and drug-related offenses and an aggravated assault

17  with intent to commit murder, and his service of three prison terms;

18  (3) Petitioner's prison disciplinary history, including fourteen

19  misconduct citations and eight disciplinary violations; (4) a

20  psychologist's report that diagnosed Petitioner as having "Antisocial

21  Personality Disorder" and opined that Petitioner's propensity for

22  violence was "slightly higher than that of the average citizen";

23  (5) Petitioner's insufficient participation in self-help, as evidenced

24  by the fact that Petitioner only began to participate in Alcoholics

25  Anonymous within two years prior to the hearing, and by Petitioner's

26  inability to recall the fifth step; and (6) Petitioner's failure to

27

28

18

1  develop sufficient marketable skills though vocational training.[9]  See

2  Rose v. Kane, ___ Fed. App'x ___, 2008 WL 740311 (9th Cir. Mar. 18,

3  2008) (affirming denial of parole based on commitment offense and

4  petitioner's demeanor and "demonstrated lack of insight" at parole

5  hearing); Lewis v. Calif. Bd. of Prison Terms, 264 Fed. App'x 657 (9th

6  Cir., Jan 18, 2008) (affirming denial of parole based on petitioner's

7  criminal history, failure to pursue vocational training and self-help

8  programs, and prison disciplinary record); Wauls v. Muntz, 256 Fed.

9  App'x 106 (9th Cir. Nov. 26, 2007) (nature of commitment offense,

10 criminal history, and disciplinary history sufficient); Rosas v.

11 Nielsen, 428 F.3d 1229, 1232-33 (9th Cir. 2005) (circumstances of

12 commitment offense along with psychiatric reports showing petitioner

13 had failed to complete necessary programming while in prison

14 sufficient); Burnight v. Carey, 2007 WL 3231583, at *3 & n.1 (E.D.

15 Cal. Oct. 30, 2007), adopted, 2008 WL 275694 (E.D. Cal. Jan. 31, 2008)

16 (nature of commitment offense and triviality of motive sufficient);

17 Martinez v. Kane, 2007 WL 2729799, at *6 (N.D. Cal. Sept. 19, 2007)

18 (nature of commitment offense, escalating pattern of criminal

19 activity, counselor's and psychologist's reports, and inadequate self-

20 help as evidenced in part by petitioner's lack of knowledge of the

21 twelve steps despite his purported participation in several twelve-

22 step programs sufficient).[10]

23 ///

24 _____

25 [9]    Contrary to Petitioner's contention (see Pet. Mem.,
   pp. 18-19), the record does not show that the BPH failed to give
26 Petitioner "individualized consideration."

27 [10]   The Court may cite unpublished Ninth Circuit opinions
   issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir.
28 Rule 36-3(b); Fed. R. App. P. 32.1(a).

1   Petitioner argues that the BPH should have weighed more heavily

2   arguably positive factors.  This Court cannot re-weigh the factors

3   supporting parole suitability and the factors supporting parole

4   unsuitability.  See Chichil v. Kane, 255 Fed. App'x 194, 194 (9th Cir.

5   2007) ("the 'some evidence' standard does not allow us to reweigh the

6   evidence before the [BPH]"); Crawley v. Knowles, 235 Fed. App'x 563,

7   564 (9th Cir. 2007) ("The 'some evidence' standard does not allow us

8   to entertain Crawley's contentions regarding how the [BPH] evaluated

9   the evidence it had before it when it made its suitability

10   determination. [citation]".); Powell v. Gomez, 33 F.3d at 42;

11   Countryman v. Stokes, 2008 WL 1335934, at *11 (C.D. Cal. Apr. 8,

12   2008); Collier v. Dexter, 2008 WL 816688, at *12 (C.D. Cal. Mar. 25,

13   2008).

14

15   Petitioner argues that some of the BPH's findings were incorrect

16   or unsupported by the evidence.  Even if the BPH made some

17   insupportable findings, the Court nevertheless must deny habeas relief

18   where, as here, there exists "some evidence" supporting the BPH's

19   finding of unsuitability.  See Biggs, 334 F.3d at 916.

20

21   Petitioner argues the BPH erred by continuing to rely on

22   immutable factors such as the commitment offense, Petitioner's

23   criminal history, and Petitioner's pre-conviction drug and alcohol

24   use, citing, inter alia, Biggs (Pet. Mem., pp. 27-30).  In dicta, the

25   Biggs Court stated:

26

27   Over time, however, should Biggs continue to demonstrate

28   exemplary behavior and evidence of rehabilitation, denying

1    him a parole date simply because of the nature of Biggs'

2    offense and prior conduct <u>would raise serious questions</u>

3    involving his liberty interest in parole. . . .

4

5    . . . A <u>continued</u> reliance in the future on an

6    unchanging factor, the circumstance of the offense and

7    conduct prior to imprisonment, runs contrary to the

8    rehabilitative goals espoused by the prison system and <u>could</u>

9    <u>result</u> in a due process violation.

10

11   <u>Biggs</u>, 334 F.3d at 916-17 (emphasis added).

12

13   As previously indicated, the BPH did not rely solely on the

14   alleged immutable factors (the commitment offense, Petitioner's

15   criminal history and Petitioner's pre-conviction drug and alcohol use)

16   to deny parole in the present case.  Therefore, the <u>Biggs</u> dicta would

17   be inapplicable even if it were otherwise persuasive or authoritative.

18   See <u>Chan v. Kane</u>, 2008 WL 925552, at *1 (9th Cir. Apr. 7, 2008)

19   (rejecting claim that BPH relied only on commitment offense and other

20   unchanging factors, where record showed BPH also relied on

21   petitioner's failure to participate in self-help programming and his

22   insufficient parole plans); <u>Withers v. Finn</u>, 2007 WL 2729078, at *6

23   (E.D. Cal. Sept. 18, 2007, <u>adopted</u>, 2007 WL 3293378 (E.D. Cal. Nov. 5,

24   2007) (distinguishing <u>Biggs</u> where denial of parole additionally was

25   based on petitioner's inadequate parole plans, and thus was not based

26   "*solely* on immutable factors"; original emphasis); <u>Rose v. Kane</u>, 2006

27   WL 3251735, at *11 (N.D. Cal. Nov. 2, 2006), <u>aff'd</u>, ___ Fed. App'x __,

28   2008 WL 740311 (9th Cir. Mar. 18, 2008) (<u>Biggs</u> dicta inapplicable

1   where BPH did not base denial solely on gravity of commitment offense,

2   but also relied on fact that petitioner needed more self-help and

3   therapy).

4

5      Moreover, an analysis of Ninth Circuit cases subsequent to Biggs

6   demonstrates that Petitioner's circumstances cannot justify habeas

7   relief under the Biggs dicta.  In Sass, the Ninth Circuit held that

8   the gravity of the commitment offense (second degree murder) and the

9   evidence of Sass' prior offenses demonstrated the requisite "some

10  evidence" to support the BPH's denial of parole.  Sass, 461 F.3d at

11  1129.  Acknowledging the Biggs dicta, the Sass Court indicated

12  nevertheless that it was not the Court's function "to speculate about

13  how future parole hearings should proceed."  Id.

14

15     In Irons, the BPH deemed the petitioner, a second degree

16  murderer, unsuitable for parole despite his exemplary behavior in

17  prison.  On federal habeas, Irons argued, inter alia, that under the

18  Biggs dicta the BPH had violated Due Process by relying repeatedly on

19  the nature of the commitment offense to deny parole.  Relying on Sass,

20  the Ninth Circuit rejected this argument.  Irons, 505 F.3d at 853-

21  54.[11]  The Court observed, inter alia, that the crime in Sass was less

22  callous than that in Irons, and that the petitioners in Biggs, Sass

23  and Irons had not served the minimum term to which they had been

24  sentenced at the time of the BPH's denial of parole.  Id.  However,

25  _____

26      [11]   Although Petitioner relies on the district court's
    opinion in Irons v. Carey 358 F. Supp. 2d 936 (E.D. Cal. 2005)
27  (see Pet. Mem., p. 27), the Ninth Circuit reversed the district
    court's order granting habeas relief in that case.  See Irons v.
28  Carey, 505 F.3d at 854.

1   the Court carefully limited its holding to the "particular

2   circumstances" of the offenses in <u>Biggs</u>, <u>Sass</u> and <u>Irons</u>.  <u>Id.</u>  ("All

3   we held in [<u>Biggs</u> and <u>Sass</u>], and all we hold today, . . . is that,

4   given the particular circumstances of the offenses in these cases, due

5   process was not violated when these prisoners were deemed unsuitable

6   for parole prior to the expiration of their minimum terms."); <u>see</u>

7   <u>Biggs v. Schwarzenegger</u>, 2007 WL 1140721, at *3 n.2 (E.D. Cal.

8   Apr. 17, 2007) ("<u>Irons</u> did not decide that reliance on unchanging

9   factors after the minimum term had been served was unlawful.  We

10  simply know that 'maybe' that will be the case.").

11

12       The day after the original Ninth Circuit decision in <u>Irons</u>,[12] the

13  Circuit reversed a district court's grant of parole eligibility in

14  <u>Kunkler v. Muntz</u>, 226 Fed. App'x 669 (9th Cir. 2007).  In that case,

15  after the BPH granted parole at the petitioner's eighth parole

16  hearing, the Governor reversed the decision, citing the gravity of the

17  commitment offense and the petitioner's criminal history.  <u>Id.</u> at *1.

18  The Superior Court held the BPH could not rely on the petitioner's

19  criminal history to deny parole because there was no evidence that any

20  of the petitioner's prior crimes involved violence.  <u>Id.</u>  On federal

21  habeas review, the district court granted the petition, applying the

22  <u>Biggs</u> dicta.  The Ninth Circuit reversed, holding that there was some

23  evidence to support the BPH's decision, and quoting <u>Sass</u>' admonition

24  that "'it is not [this court's] function to speculate about how future

25

26  _____

27      [12]    The original <u>Irons</u> opinion, later amended in respects
    immaterial to the present proceeding, was filed on March 6, 2007.
28  <u>See Irons v. Carey</u>, 479 F.3d 658 (9th Cir. 2007), <u>amended</u>, 505
    F.3d 846 (9th Cir., July 13, 2007) .

1  parole hearings could proceed.'"   Id. at *2 (citation omitted;

2  original brackets).

3

4      Nothing in Sass, Irons or Kunkler alters this Court's conclusion

5  that a grant of habeas relief to Petitioner under Biggs dicta is not

6  supported, much less compelled, by any "clearly established" Supreme

7  Court law.[13]   Section 2254(d)(1)'s reference to "clearly established

8  federal law" "refers to holdings, as opposed to the dicta, of [Supreme

9  Court] decisions."   Williams v. Taylor, 529 U.S. 362, 365 (2000).   The

10 statements from Biggs quoted above are the dicta of a Court of

11 Appeals, not the Supreme Court.   Indeed, in Culverson v. Davison, 2007

12 WL 1663682 (9th Cir. June 8, 2007), cert. denied, 128 S. Ct. 2475

13 (May 19, 2008), the Ninth Circuit expressly ruled that "[t]here is no

14 'clearly established federal law as determined by the Supreme Court of

15 the United States' that limits the number of times a parole board may

16 deny parole to a murderer based on the brutality and viciousness of

17 the commitment offense."   Id. at *1 (footnotes omitted).   The Court

18 ruled that "[t]he *dicta* in Ninth Circuit cases like [Biggs] are not

19 holdings of the Supreme Court, as required by Carey v. Musladin, 549

20 U.S. ____, at *5-7 [127 S. Ct. 649] (2006), and Shriro [sic] v.

21 Landrigan, ___ U.S. ___, 2007 WL 1387923, at *8-9 (May 14, 2007) [127

22 S. Ct. 1933 (2007)]."   Id.; see also Fernandez v. Kane, 2006 WL

23 ────────────────

24      [13]   One might conclude from Sass, Irons, and Kunkler that
there does not exist any clearly established Ninth Circuit law in
25 this area (much less any clearly established Supreme Court law).
See Biggs v. Schwarzenegger, 2007 WL 1140721, at *3-4 (discussing
26 lack of guiding standards in Sass and Irons); see also Kleve v.
Kane, 2007 WL 879069, at *6 (N.D. Cal. Mar. 21, 2007) (noting
27 that the Ninth Circuit has not specified the number of denials or
the length of time served beyond the minimum sentence that might
28 trigger a Due Process violation).

1   3041083, at *3 (N.D. Cal. Oct. 24, 2006) (<u>Biggs</u> dicta not clearly

2   established federal law as set forth by the Supreme Court).

3

4        Petitioner also contends the BPH violated Title II of the

5   Americans with Disabilities Act, 42 U.S.C. section 12321 <u>et seq.</u>

6   ("ADA") by denying parole based on Petitioner's history of drug use

7   (Petition, pp. 32-34).[14]  In <u>Thompson v. Davis</u>, 295 F.3d 890 (9th Cir.

8   2002), <u>cert. denied</u>, 538 U.S. 921 (2003), the Ninth Circuit held that,

9   under Title II of the ADA, a parole board could not categorically

10  exclude a class of disabled persons (in that case former drug addicts)

11  from consideration for parole because of their alleged disabilities.

12  <u>Id.</u> at 898.  However, the court also ruled that Title II of the ADA

13  did not "categorically bar a state parole board from making an

14  individualized assessment of the future dangerousness of an inmate by

15  taking into account the inmate's disability."  <u>Id.</u> at 898 n.4 ("The

16  parole board claims to have and undeniably does have legitimate

17  penological interests in considering the plaintiffs' substance abuse

18  backgrounds during the individualized inquiry for parole suitability.

19  We hold only that plaintiffs may state a claim under Title II based on

20  their allegations that the parole board failed to perform an

21  individualized assessment of the threat they pose to the community by

22  categorically excluding from consideration all people with substance

23  abuse histories.").

24  _____

25       [14]   Under Title II of the Americans with Disabilities Act,
26  "no qualified individual with a disability shall, by reason of
    such disability, be excluded from participation in or be denied
27  the benefits of the services, programs, or activities of a public
    entity, or be subjected to discrimination by any such entity."
28  <u>See</u> 42 U.S.C. § 12132.

1    The record does not show the BPH categorically excluded

2  Petitioner from parole consideration because of Petitioner's substance

3  abuse history.  Rather, the BPH conducted precisely the sort of

4  individualized assessment approved in Thompson v. Davis.  Petitioner's

5  contention that the BPH violated Title II of the ADA by denying

6  Petitioner parole is without merit.  See Eccher v. Mendoza-Powers,

7  2007 WL 867985, at *15 (E.D. Cal. Mar. 20, 2007), adopted, 2007 WL

8  1302490 (E.D. Cal. May 3, 2007) ("Petitioner's past history of

9  substance abuse was a legitimate factor for the [BPH] to take under

10  consideration, along with other factors, in determining whether he was

11  suitable for parole."); Brown v. Brown, 2008 WL 2477398, at *4 n.1

12  (N.D. Cal. June 18, 2008) (rejecting claim that BPH's consideration of

13  Petitioner's need for substance abuse therapy violated the ADA as

14  construed in Thompson v. Davis).

15

16    For the foregoing reasons, the state courts' rejection of

17  Petitioner's challenge to the BPH's denial of parole was not contrary

18  to, or an objectively unreasonable application of, any clearly

19  established Federal law as determined by the United States Supreme

20  Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas

21  relief.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

DATED:   July 17, 2008.


_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.